UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, ADDITIONAL
SECURITY BENEFIT FUND, VACATION AND
HOLIDAY FUND, TRADE EDUCATION FUND,
AND 401(K) SAVINGS PLAN, ET AL.,

        MEMORANDUM AND ORDER

        Plaintiffs,

        12 Civ. 05646 (ILG) (SMG)

    - against -

TEMPERINI MECHANICAL, INC., ET AL.,

        Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

The Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation and Holiday Fund, Trade Education Fund, and 401(k) Savings Plan ("Local Trustees"), and Trustees of the Plumbers and Pipefitters National Pension Fund and Trustees of the International Training Fund (collectively "National Trustees," and together with the Local Trustees "Trustees") sue Temperini Mechanical, Inc. ("TMI") and Joseph Temperini ("Temperini," and together with TMI "Defendants") for violating the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. § 141 et seq. ("LMRA"). Plaintiffs move for summary judgment. For the reasons that follow, the motion is GRANTED with a lower damages award than the Trustees request.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] TMI, a plumbing contractor operating in New York City, employs several members of Local Union

---

[1] Defendants have not submitted a statement countering the Trustees' Local Rule 56.1 statement, as required by subpart b of the local rule. This Court accordingly deems the facts in the Trustees' Local Rule

1

Number 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("the Union"). Temperini is the President and CEO of TMI, and has been a majority owner since at least November 2009. NYC Department of Buildings Business Search (Dkt. No. 22-1); NYS Department of State Business Search (Dkt. No. 22-2). TMI and the Union are parties to a collective bargaining agreement ("CBA"), which became effective on October 1, 2005, and remains in effect. CBA at 2 (Dkt. No. 18-1). Temperini signed the CBA as TMI's President. CBA Signature Page (Dkt. No. 18-2). The CBA requires TMI to, "[c]ommencing with the effective dates of this Agreement," contribute funds on its own behalf or remit funds withheld from its employees' wages to several employee-benefit and Union funds. CBA at 9–13.

To be precise, the CBA requires TMI to contribute to 11 different funds. Five of the 11 funds are multiemployer employee-benefit funds administered at the local level ("Local 1 Funds"): the Welfare Fund; the Vacation and Holiday Fund; the Trade Education Fund; the Additional Security Benefit Fund; and the 401(k) Savings Plan. CBA at 14–17. Two of the 11 funds are multiemployer employee-benefit funds administered at the national level ("National Funds"): the National Pension Fund; and the International Training Fund. Id. at 10, 12, 14, 16. And lastly, four of the 11 funds are non-employee-benefit funds operated by the Union ("Union Funds"): the Political Action Fund; the Organizing Fund; the Plumbing Industry Promotion Fund;[2] and the fund for Union dues. Id. at 7, 11, 13, 22–23.

---

56.1 statement admitted to the extent that the record supports their statement. See Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004).

[2] At times, the Trustees seem to presume that the Plumbing Industry Promotion Fund, which was established "for the mutual benefit of all plumbing contractors who do business in the area," is an employee-benefit fund. CBA at 21. It does not, however, qualify as such pursuant to ERISA. See 29 C.F.R. 2510.3-1(i); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Aljer Plumbing & Heating Corp., CV 09–1815, 2011 WL 1239878, at 2 n.2 (E.D.N.Y. March 16, 2011), report and recommendation adopted by

The CBA provides the specific amount due to each fund each month, as an hourly rate or a percentage of an employee's gross wages. CBA at 7, 10–16. It also provides for an increase, to be allocated by the Union between wages and the benefit funds, every six months between October 1, 2005, and September 30, 2009. Id. at 10, 12. The contributions and remittances must be made by the 20th day of the month following the month in which the obligations were incurred. Id. at 18. Untimely payments are subject to 10% interest, 20% liquidated damages, costs, and attorney's fees, as well as lost earnings for employee contributions to the 401(k) Savings Plan. Id. at 15, 17, 19.

The Trustees have provided three types of evidence to prove the amount of delinquent payments. First, for the period from January 1, 2005, to December 31, 2009, the Trustees submit a declaration and audit prepared by a certified public accountant ("CPA"). Del Orfano Decl. (Dkt. No. 21); Audit (Dkt. No. 21-1). The CPA concludes that TMI failed to contribute $25,170.97 to the Local 1 Funds and $2,852.92 to the Union Funds during this period. Del Orfano Decl. at ¶ 7. The CPA submitted the audit to TMI in October 2011, and Temperini responded that he had reviewed the audit and agreed with the CPA's conclusions.[3] Temperini Ltr. (Dkt. No. 21-2).

Second, for the period from December 1, 2009, through March 31, 2011, Plaintiffs submit 32 pages of TMI's remittance reports, all of which Temperini signed, which detail how much money TMI was required to pay into the various funds each month based on its employees' hours and wages that month. Remittance Reports (Dkt. No. 19-6). Using these reports, the administrators of these funds conclude that TMI owes $98,316.39 in delinquent contributions to the Local 1 and Union Funds and $14,920.16

---

2011 WL 1187815 (March 30, 2011); Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry & Tile Contractors Ass'n, CV–LV–81–726, 1990 WL 270784, at *4–6 (D. Nev. 1990).
[3] Curiously, Temperini's letter responding to the audit is dated October 5, 2011, while the audit is dated October 10, 2011.

in delinquent contributions to the National Funds for this period. Saraceni Decl. at ¶ 7 (Dkt. No. 19); Sweeney Decl. at ¶ 7 (Dkt. No. 20).

And third, for the period from March 1, 2012, through September 30, 2012, TMI did not submit remittance reports and no audit has been done, so the Trustees estimate the amount due to the funds based on prior remittance reports, in accordance with the trust agreements governing the Local 1 and National Funds.[4] Welfare Fund Agreement at 27–28 (Dkt. No. 19-1); Additional Security Benefit Fund Agreement at 31–32 (Dkt. No. 19-2); Vacation and Holiday Fund Agreement at 27–28 (Dkt. No. 19-3); Trade Education Fund Agreement at 28–29 (Dkt. No. 19-4); 401(k) Plan Agreement at 21 (Dkt. No. 19-5); National Pension Fund Agreement at 26–27 (Dkt. No. 20-1); International Training Fund Agreement at 28–29 (Dkt. No. 20-2). The administrators of the funds estimate that TMI owes $39,414.48 in delinquent contributions to the Local 1 and Union Funds and $6,389.67 in delinquent contributions to the National Funds for this period. Saraceni Decl. at ¶ 10; Sweeney Decl. at ¶ 10.

The Trustees filed their complaint on November 16, 2012. (Dkt. No. 1). Defendants filed an answer on January 4, 2013, and an amended answer on March 7, 2013. (Dkt. Nos. 7 & 9). The Trustees moved for summary judgment on January 27, 2014. (Dkt. No. 16). Defendants filed their opposition papers on March 19, 2014. Response (Dkt. 26). The Trustees filed their reply papers on April 2, 2014. Reply (Dkt. No. 27).

---

[4] There is no agreement that prescribes the same method of estimation for the Union Funds, though the Trustees assume the same method applies.

# DISCUSSION

## I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010) (quotation omitted). The moving party bears the burden of establishing the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A court deciding a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Brod v. Omya, Inc.</u>, 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

## II. Analysis

The Trustees argue that uncontroverted evidence establishes that TMI was contractually obligated to pay contributions to the Local 1, National, and Union Funds, and failed to do so. Memorandum at 4 (Dkt. No. 23). They further contend that Temperini is personally liable for the delinquency because he qualifies as a fiduciary pursuant to ERISA. Id. at 6–9. And they argue the Local 1 and Union Funds are due a combined $165,754.76 and the National Funds are due $21,309.83, plus 10% interest per annum, and the greater of either 20% liquidated damages or another share of the interest payment. Id. at 4–6. Plaintiffs do not ask for lost earnings for the untimely

401(k) remittances and say that they intend to seek attorney's fees and costs at a later date. Id. at 11.

**A. Liability**

**1. TMI**

The Trustees argue that the CBA requires TMI to pay contributions to the Local 1, National, and Union Funds, that TMI is bound by the CBA, and that TMI failed to make such payments. Memorandum at 3–4. Defendants do not make any meaningful argument regarding the issue of TMI's liability.

An employer is liable for delinquent contributions pursuant to ERISA if (1) the relevant funds are multiemployer plans within the definition of ERISA, (2) the employer is obligated to pay contributions under the terms of the plans, and (3) the employer failed to pay contributions in accordance with the terms. Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Const. Corp., No. 09-CV-4892, 2011 WL 2940181, at *1 n.1 (E.D.N.Y. July 19, 2011).

The Trustees have demonstrated that TMI is liable for delinquent contributions to the Local 1 and National Funds. The uncontroverted evidence shows that the Local and National Funds are multiemployer employee-benefit plans as defined in ERISA, see 29 U.S.C. § 1002(3) & (37), that TMI is an employer that is obligated to pay contributions to the benefit plans under the CBA and trust agreements, see id. at § 1002(5), and that TMI did not pay all of the required contributions.

The Trustees have not, however, demonstrated that TMI is liable for delinquent contributions to the Union Funds. In their complaint, the Trustees seek delinquent

contributions only for the Local 1 and National Funds,[5] and a party may not raise new claims in motion briefing papers. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998); Enzo Biochem, Inc. v. Amersham, PLC, No. 02 CIV. 8448, 2013 WL 5943985, at *4 (S.D.N.Y. Oct. 22, 2013). The Union Funds are thus outside the scope of this lawsuit and the Trustees are not entitled to a ruling regarding TMI's liability for payments to the Union Funds.

## 2. Temperini

The Trustees next argue that Temperini is personally liable for TMI's delinquent contributions because he meets ERISA's definition of a fiduciary. Memorandum at 6–9. They present evidence that he is the President and CEO of TMI; that he has been a majority owner since November 2009; and that he signed the CBA, remittance reports, and letter approving the audit on TMI's behalf. CBA Signature Page; Temperini Ltr.; NYC Department of Buildings Business Search; NYS Department of State Business Search. Defendants respond that Temperini could be liable only if the Trustees meet the requirements to pierce the corporate veil. Response at ¶ 5. They also contend that Temperini should not be held personally liable because he was unable to make the payments due to circumstances out of his control: TMI's treasurer embezzled between $120,000 and $150,000 from the company, and TMI has not been paid for about $100,000 of work. Id. at ¶¶ 11, 14.

---

[5] Their first claim alleges that TMI failed to pay contributions to the Local 1 Funds—which the Trustees define in the Complaint as the Welfare Fund, Additional Security Benefit Fund, Vacation and Holiday Fund, Trade Education Fund, and 401(k) Savings Plan—from November 2009 through September 2012 (Compl. at ¶¶ 4, 22); their second claim alleges that TMI failed to pay contributions to the 401(k) Savings Plan from October 2010 through September 2012 (Id. at ¶ 26); their third claim alleges that TMI failed to pay contributions to the National Pension Fund and International Training Fund from November 2009 through September 2012 (Id. at ¶ 30); their fourth claim alleges that TMI failed to pay contributions to the Local 1 Funds during the audit period, from January 2005 through December 2009 (Id. at ¶ 34); and their fifth claim alleges that Temperini is personally liable for the delinquent contributions (Id. at ¶ 50).

A person is a fiduciary pursuant to ERISA, and thus individually liable for a corporation's delinquent ERISA contributions, if 1) the plan agreement defines unpaid contributions as plan assets and 2) the person possesses or exercises any discretionary authority or control respecting management of those plan assets. 29 U.S.C. §§ 1002(21)(A)(i), 1109(a); Finkel v. Romanowicz, 577 F.3d 79, 82 n.4, 85 (2d Cir. 2009); Rahm v. Halpin, 566 F.3d 286, 289 (2d Cir. 2009). "Congress intended the term [fiduciary] to be broadly construed." Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987). A person may be held liable as a fiduciary pursuant to ERISA even if the conditions for piercing the corporate veil are not satisfied. Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989).

The uncontroverted evidence shows that Temperini is personally liable for delinquent contributions to the Local 1 and National Funds. First, the trust agreements for the Local 1 and National Funds define unpaid contributions as plan assets. Welfare Fund Agreement at 6; Additional Security Benefit Fund Agreement at 6; Vacation and Holiday Fund Agreement at 6; Trade Education Fund Agreement at 6; 401(k) Plan Agreement at 5; National Pension Fund Agreement at 7; International Training Fund Agreement at 6. As mentioned above, the Union Funds are not within the scope of this lawsuit, so this Court need not address whether delinquent payments to the Union Funds are considered plan assets. Second, the Trustees have shown that Temperini possesses discretionary authority over the unpaid contributions on account of his role as president, CEO, owner, and the person who approved and signed documents related to contributions to the funds. See, e.g., Trs. of the Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contrs., Inc., 478 F. Supp. 2d 279, 283 (D. Conn. 2007) (concluding that a person who was president and 41% shareholder, signed the CBA, and

decided which bills to pay was a fiduciary); NYSA-ILA Med. & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 202 (S.D.N.Y. 1999) (concluding that president and controlling shareholder who ran the corporation and made payment decisions was a fiduciary). And although the Court sympathizes with Temperini about his difficulty making contributions given the circumstances his business faced, he has not cited and the Court cannot find any legal authority for the proposition that these circumstances somehow lessen his discretionary authority over the funds.

**B. Damages**

The Trustees request damages in the amount of $165,754.76 for delinquent payments to the Local 1 and Union Funds and $21,309.83 for delinquent payments to the National Funds for the period from January 1, 2005, to September 30, 2012. Memorandum at 10. Defendants respond that TMI was not obligated to make the entirety of these payments because TMI "only signed two agreements on or around the year of 2004 and 2005 and did not sign the CBA in years 2006-2011." Response at ¶ 7. They also contend that "Plaintiffs did not furnish any documents to support their claim that the amount owed is $95,000 which is merely speculative in nature. Plaintiff's [sic] speculate a number with no affidavit of an accountant or any individual or company that did an audit to invoice that any money was owed." Id. at ¶¶ 3–4. The Defendants do not otherwise challenge the Trustees' damages calculations.

The Defendants' arguments are baseless. First, the CBA became effective on October 1, 2005, and provides that it "shall continue in effect until and including September 30, 2009, and during each year thereafter unless on or before the fifteenth (15th) day of June, 2009 or on or before the fifteenth (15th) day of June of any year thereafter, written notice of termination or proposed changes shall have been served by

9

either party on the other party." CBA at 2, 4, 28; CBA Signature Page. Because the Union never received a written notice of termination, the CBA remained in effect. Doherty Decl.[6] at ¶ 7 (Dkt. No. 18). Second, nowhere do the Trustees request damages in the amount of $95,000, and it is entirely unclear why Defendants refer to this amount. Third, the Trustees <u>have</u> submitted a great deal of documentation to support their request, <u>including an audit prepared by a CPA</u>.

The Court, however, has discovered several significant problems with the Trustees' calculations that require correction and ultimately a lower damages award than the one the Trustees request.

**1. October 1, 2005, to November 30, 2009**

To establish damages for the period from October 1, 2005, to December 31, 2009, the Trustees submit a declaration and audit report from Mark Del Orfano, a CPA. Del Orfano declares that he used payroll records, tax returns, and other data to conclude that TMI had failed to pay contributions for approximately 4,000 hours of work from January 1, 2005, to December 31, 2009. Del Orfano Decl. at ¶¶ 4–5. He concludes that TMI failed to pay $25,170.97 to the Local 1 Funds and $2,852.92 to the Union Funds. Id. at ¶¶ 6–7. The audit attached to his declaration sets out the calculations on which Del Orfano bases his conclusions.

There are several problems with these figures. First, the audit includes delinquencies beginning on January 1, 2005, but the CBA did not become effective until October 1, 2005. CBA at 2, 4, 28. Second, the Trustees have double-counted deficiencies for the month of December 2009 by seeking damages based upon both the audit and remittance reports for this month. Moreover, for December 2009, the audit provides for

---

[6] The Court notes that the Doherty Declaration says that it is made "in support of Plaintiffs' motion for default judgment," despite the fact that the Plaintiffs have moved for summary judgment.

10

a higher deficiency than the remittance reports for the Local 1 and Union Funds, and the remittance reports include deficient payments to the National Funds while the audit does not.[7] Third, the audit also includes delinquencies owed to the Union Funds, but as discussed above, the Union Funds are not within the scope of this lawsuit. Fourth, the audit includes two kinds of payments related to the Vacation and Holiday Fund: contributions to the fund itself, as well as additional payments for Federal Insurance Contributions Act ("FICA") taxes on the contributions to the fund. But the CBA says only that the fund is subject to FICA; it does not say that TMI must pay FICA taxes in addition to its contributions to the Vacation and Holiday Fund. CBA at 14, 16.

Correcting for these problems, the Court has calculated that TMI owes the Local Trustees $11,847.88 for the period from October 1, 2005, through November 30, 2009.

| Month | Local 1 Funds Deficiency | Nat'l Funds Deficiency | Total Deficiency |
|---|---|---|---|
| October 2005 | $352.23 | $0.00 | $352.23 |
| November 2005 | $246.93 | $0.00 | $246.93 |
| December 2005 | $2,896.22 | $0.00 | $2,896.22 |
| January 2006 | -$163.48 | $0.00 | -$163.48 |
| February 2006 | $608.56 | $0.00 | $608.56 |
| March 2006 | -$551.60 | $0.00 | -$551.60 |
| April 2006 | $0.00 | $0.00 | $0.00 |
| May 2006 | $0.00 | $0.00 | $0.00 |
| June 2006 | $1,147.18 | $0.00 | $1,147.18 |
| July 2006 | $1,311.60 | $0.00 | $1,311.60 |
| August 2006 | $1,005.21 | $0.00 | $1,005.21 |
| September 2006 | -$185.60 | $0.00 | -$185.60 |
| October 2006 | $800.32 | $0.00 | $800.32 |
| November 2006 | -$334.04 | $0.00 | -$334.04 |

---

[7] The audit provides that 820 hours were worked and TMI failed to pay contributions of $7,960.40 to the Local 1 and Union Funds in December 2009, while the remittance reports provide that 684 hours were worked and TMI failed to pay contributions to the Local 1 and Union Funds of $6,850.22 in December 2009. The audit does not list deficient payments for the National Funds, whereas the remittance reports provide that TMI failed to contribute $1,037.52 to the National Funds in December 2009. The Court uses the deficiencies as recorded in the remittance reports, which provide more detail than the audit. The deficiencies for December 2009 are thus included in the next table rather than this table.

| Month | | | |
|---|---:|---:|---:|
| December 2006 | $370.04 | $0.00 | $370.04 |
| January 2007 | $4.56 | $0.00 | $4.56 |
| February 2007 | $394.97 | $0.00 | $394.97 |
| March 2007 | $350.88 | $0.00 | $350.88 |
| April 2007 | $0.00 | $0.00 | $0.00 |
| May 2007 | $0.00 | $0.00 | $0.00 |
| June 2007 | $0.00 | $0.00 | $0.00 |
| July 2007 | $0.00 | $0.00 | $0.00 |
| August 2007 | $7.60 | $0.00 | $7.60 |
| September 2007 | $6.08 | $0.00 | $6.08 |
| October 2007 | $23.20 | $0.00 | $23.20 |
| November 2007 | $64.96 | $0.00 | $64.96 |
| December 2007 | $398.40 | $0.00 | $398.40 |
| January 2008 | -$150.80 | $0.00 | -$150.80 |
| February 2008 | $110.96 | $0.00 | $110.96 |
| March 2008 | -$4.48 | $0.00 | -$4.48 |
| April 2008 | $22.40 | $0.00 | $22.40 |
| May 2008 | $38.50 | $0.00 | $38.50 |
| June 2008 | $256.80 | $0.00 | $256.80 |
| July 2008 | $0.00 | $0.00 | $0.00 |
| August 2008 | $26.88 | $0.00 | $26.88 |
| September 2008 | $17.60 | $0.00 | $17.60 |
| October 2008 | $0.00 | $0.00 | $0.00 |
| November 2008 | $49.60 | $0.00 | $49.60 |
| December 2008 | $25.60 | $0.00 | $25.60 |
| January 2009 | $0.00 | $0.00 | $0.00 |
| February 2009 | $412.20 | $0.00 | $412.20 |
| March 2009 | $0.00 | $0.00 | $0.00 |
| April 2009 | -$571.20 | $0.00 | -$571.20 |
| May 2009 | $844.80 | $0.00 | $844.80 |
| June 2009 | -$844.80 | $0.00 | -$844.80 |
| July 2009 | $1,984.80 | $0.00 | $1,984.80 |
| August 2009 | -$301.20 | $0.00 | -$301.20 |
| September 2009 | -$148.80 | $0.00 | -$148.80 |
| October 2009 | $1,656.00 | $0.00 | $1,656.00 |
| November 2009 | -$331.20 | $0.00 | -$331.20 |
| **Grand Total** | **$11,847.88** | **$0.00** | **$11,847.88** |

### 2. December 1, 2009, to March 31, 2011

To establish damages for the period from December 1, 2009, to March 31, 2011, the Trustees submit monthly remittance reports prepared by Temperini, detailing the

12

number of hours worked, the employees' gross wages, and the amount TMI was required to pay to the various funds for that month. Based upon these reports, Walter Saraceni, the administrator of the Local 1 Funds, concludes that TMI was required and failed to contribute $98,316.39 to the Local 1 and Union Funds from December 2009 through March 2011. Saraceni Decl. at ¶ 7. William Sweeney, the administrator of the National Funds, concludes that TMI was required and failed to contribute an additional $14,920.16 to the National Funds from December 2009 through March 2011. Sweeney Decl. at ¶ 7. Neither Saraceni nor Sweeney has provided the calculations underlying their conclusions.

There are, again, several problems with the Trustees' figures for this period. First, as was the case with the audit calculations, Saraceni's calculations include delinquent contributions for "Union assessments," but as discussed above, delinquent contributions to the Union Funds are not within the scope of this lawsuit. Second, the remittance reports reflect an increase in the rate of contribution to the National Pension Fund in October 2010, from $2.41 to $2.91 per hour for Journeymen and from $1.15 to $1.40 per hour for Helpers. But the CBA provides for increases only through September 2009; the October 2010 increase is therefore unsupported by the CBA. CBA at 10, 12. Third, there are miscalculations in the remittance reports—for the months of January 2010 and December 2010—and it is not clear that Saraceni or Sweeny accounted for these errors, all of which resulted in overpayment, in their calculations.

13

Correcting for these errors,[8] the Court has calculated that TMI owes the Local Trustees $86,523.20 and the National Trustees $14,626.56 for the period from December 1, 2009, to March 31, 2011.

| Time Period | Local 1 Funds Deficiency | Nat'l Funds Deficiency | Total Deficiency |
|---|---|---|---|
| December 2009 | $6,066.12 | $1,037.52 | $7,103.64 |
| January 2010 | $6,923.20 | $1,161.60 | $8,084.80 |
| February 2010 | $6,514.48 | $1,093.92 | $7,608.40 |
| March 2010 | $7,177.60 | $1,210.56 | $8,388.16 |
| April 2010 | $3,148.80 | $532.80 | $3,681.60 |
| May 2010 | $6,735.52 | $1,132.80 | $7,868.32 |
| June 2010 | $7,269.36 | $1,219.68 | $8,489.04 |
| July 2010 | $6,643.76 | $1,123.68 | $7,767.44 |
| August 2010 | $6,989.92 | $1,181.76 | $8,171.68 |
| September 2010 | $6,105.76 | $1,026.24 | $7,132.00 |
| October 2010 | $1,871.56 | $312.00 | $2,183.56 |
| November 2010 | $6,297.60 | $1,065.60 | $7,363.20 |
| December 2010 | $4,935.90 | $835.56 | $5,771.46 |
| January 2011 | $3,220.74 | $547.56 | $3,768.30 |
| February 2011 | $3,374.00 | $582.24 | $3,956.24 |
| March 2011 | $3,248.88 | $563.04 | $3,811.92 |
| **Grand Total** | **$86,523.20** | **$14,626.56** | **$101,149.76** |

**3. March 1, 2012, to September 30, 2012**

To establish damages during this period, during which TMI did not submit remittance reports, the Trustees estimate the amount due to the funds based on prior remittance reports. Saraceni Decl. at ¶¶ 6–10; Sweeney Decl. at 6–10. The trust agreements for the Local 1 and National Funds direct that estimates be based on the greater of the average monthly contribution for either the most recent twelve months'

---

[8] Three payments to Union Funds are listed independently on the remittance reports and are therefore easily excised from the calculations. But payments to the Plumbing Industry Promotion Fund appear to be included in a joint contribution rate that also includes payments to the Local 1 Funds. The Court excises the payments to the Plumbing Industry Promotion Fund by subtracting the amount due to Plumbing Industry Promotion Fund—$0.25 per hour worked (CBA at 11, 13, 21)—from the joint contribution rate.

14

reports or most recent three months' reports. Welfare Fund Agreement at 27–28; Additional Security Benefit Fund Agreement at 31–32; Vacation and Holiday Fund Agreement at 27–28; Trade Education Fund Agreement at 28–29; 401(k) Plan Agreement at 21; National Pension Fund Agreement at 26–27; International Training Fund Agreement at 28–29.

According to Saraceni and Sweeney, the most recent twelve months' reports covered the period from April 2010 through March 2011. Saraceni Decl. at ¶ 9; Sweeney Decl. at ¶ 9. (Saraceni and Sweeney don't mention the most recent three months' reports, apparently having concluded that the most recent twelve months' reports result in a higher monthly average.) Saraceni concludes that the average monthly contribution owed to the Local 1 and Union Funds from April 2010 through March 2011 was $5,360.64, resulting in an estimated delinquency of $39,414.48 for the seven-month period of March 2012 through September 2012. Saraceni Decl. at ¶¶ 9–10. Sweeney concludes that the average monthly contribution owed to the National Funds from April 2010 through March 2011 was $912.81, making for an estimated delinquency of $6,389.67 for the seven-month period of March 2012 through September 2012. Sweeney Decl. at ¶¶ 9–10.

These estimated delinquencies derive from Saraceni's and Sweeney's calculations for the period from April 2010 to March 2011. The estimates therefore suffer from the same problems as the calculations for the period from April 2010 to March 2011—namely, they include funds not within the scope of the lawsuit, include increases not provided for by the CBA, and may be based on incorrect remittance reports.

Using the corrected calculations for the period from April 2010 to March 2011, the Court has calculated that the average payment to the Local 1 Funds was $4,986.82

per month and that the average payment to the National Funds was $843.58 per month. Multiplying these averages by seven results in delinquent payments to the Local Trustees in the amount of $34,907.74 and delinquent payments to the National Trustees in the amount of $5,905.06, for the period from March 1, 2012, to September 30, 2012.

| Time Period | Local 1 Funds Deficiency | Nat'l Funds Deficiency | Total Deficiency |
| --- | --- | --- | --- |
| April 2010 | $3,148.80 | $532.80 | $3,681.60 |
| May 2010 | $6,735.52 | $1,132.80 | $7,868.32 |
| June 2010 | $7,269.36 | $1,219.68 | $8,489.04 |
| July 2010 | $6,643.76 | $1,123.68 | $7,767.44 |
| August 2010 | $6,989.92 | $1,181.76 | $8,171.68 |
| September 2010 | $6,105.76 | $1,026.24 | $7,132.00 |
| October 2010 | $1,871.56 | $312.00 | $2,183.56 |
| November 2010 | $6,297.60 | $1,065.60 | $7,363.20 |
| December 2010 | $4,935.90 | $835.56 | $5,771.46 |
| January 2011 | $3,220.74 | $547.56 | $3,768.30 |
| February 2011 | $3,374.00 | $582.24 | $3,956.24 |
| March 2011 | $3,248.88 | $563.04 | $3,811.92 |
| **Grand Total** | **$59,841.80** | **$10,122.96** | **$69,964.76** |
| **Monthly Average** | **$4,986.82** | **$843.58** | **$5,830.40** |

**C. Interest**

The Trustees request 10% interest per annum on all of the delinquent payments. Memorandum at 10. The Defendants do not object.

ERISA entitles the Trustees to recover interest on unpaid contributions as provided for in the documents governing the employee-benefit plan. 29 U.S.C. § 1132(g)(2); Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 286–87 (E.D.N.Y. 2009).

The CBA provides for interest at the rate of 10% per annum for delinquent contributions to the funds.[9] This amounts to a daily interest rate of 0.0274%. The Court

---
[9] The Court notes that some of the trust agreements governing the individual funds provide for the imposition, in the Trustees' discretion, of interest at rates between 12 and 18 percent. Welfare Fund

calculates that TMI owes the Local 1 Funds $48,280.57 in interest and owes the National Funds $6,745.57 in interest.

| Time Period | Local 1 Funds Deficiency | Nat'l Funds Deficiency | Due Date | Today's Date | Days Since Due Date | Local 1 Interest Due | Nat'l Interest Due | Total Interest Due |
|---|---|---|---|---|---|---|---|---|
| October 2005 | $352.23 | $0.00 | 11/20/06 | 6/13/14 | 2762 | $266.56 | $0.00 | $266.56 |
| November 2005 | $246.93 | $0.00 | 12/20/06 | 6/13/14 | 2732 | $184.84 | $0.00 | $184.84 |
| December 2005 | $2,896.22 | $0.00 | 1/20/06 | 6/13/14 | 3066 | $2,433.07 | $0.00 | $2,433.07 |
| January 2006 | -$163.48 | $0.00 | 2/20/06 | 6/13/14 | 3035 | -$135.95 | $0.00 | -$135.95 |
| February 2006 | $608.56 | $0.00 | 3/20/06 | 6/13/14 | 3007 | $501.40 | $0.00 | $501.40 |
| March 2006 | -$551.60 | $0.00 | 4/20/06 | 6/13/14 | 2976 | -$449.79 | $0.00 | -$449.79 |
| April 2006 | $0.00 | $0.00 | 5/20/06 | 6/13/14 | 2946 | $0.00 | $0.00 | $0.00 |
| May 2006 | $0.00 | $0.00 | 6/20/06 | 6/13/14 | 2915 | $0.00 | $0.00 | $0.00 |
| June 2006 | $1,147.18 | $0.00 | 7/20/06 | 6/13/14 | 2885 | $906.83 | $0.00 | $906.83 |
| July 2006 | $1,311.60 | $0.00 | 8/20/06 | 6/13/14 | 2854 | $1,025.67 | $0.00 | $1,025.67 |
| August 2006 | $1,005.21 | $0.00 | 9/20/06 | 6/13/14 | 2823 | $777.53 | $0.00 | $777.53 |
| September 2006 | -$185.60 | $0.00 | 10/20/06 | 6/13/14 | 2793 | -$142.04 | $0.00 | -$142.04 |
| October 2006 | $800.32 | $0.00 | 11/20/06 | 6/13/14 | 2762 | $605.67 | $0.00 | $605.67 |
| November 2006 | -$334.04 | $0.00 | 12/20/06 | 6/13/14 | 2732 | -$250.05 | $0.00 | -$250.05 |
| December 2006 | $370.04 | $0.00 | 1/20/07 | 6/13/14 | 2701 | $273.86 | $0.00 | $273.86 |
| January 2007 | $4.56 | $0.00 | 2/20/07 | 6/13/14 | 2670 | $3.34 | $0.00 | $3.34 |
| February 2007 | $394.97 | $0.00 | 3/20/07 | 6/13/14 | 2642 | $285.92 | $0.00 | $285.92 |
| March 2007 | $350.88 | $0.00 | 4/20/07 | 6/13/14 | 2611 | $251.02 | $0.00 | $251.02 |
| April 2007 | $0.00 | $0.00 | 5/20/07 | 6/13/14 | 2581 | $0.00 | $0.00 | $0.00 |
| May 2007 | $0.00 | $0.00 | 6/20/07 | 6/13/14 | 2550 | $0.00 | $0.00 | $0.00 |
| June 2007 | $0.00 | $0.00 | 7/20/07 | 6/13/14 | 2520 | $0.00 | $0.00 | $0.00 |
| July 2007 | $0.00 | $0.00 | 8/20/07 | 6/13/14 | 2489 | $0.00 | $0.00 | $0.00 |
| August 2007 | $7.60 | $0.00 | 9/20/07 | 6/13/14 | 2458 | $5.12 | $0.00 | $5.12 |
| September 2007 | $6.08 | $0.00 | 10/20/07 | 6/13/14 | 2428 | $4.04 | $0.00 | $4.04 |
| October 2007 | $23.20 | $0.00 | 11/20/07 | 6/13/14 | 2397 | $15.24 | $0.00 | $15.24 |
| November 2007 | $64.96 | $0.00 | 12/20/07 | 6/13/14 | 2367 | $42.13 | $0.00 | $42.13 |
| December 2007 | $398.40 | $0.00 | 1/20/08 | 6/13/14 | 2336 | $255.00 | $0.00 | $255.00 |
| January 2008 | -$150.80 | $0.00 | 2/20/08 | 6/13/14 | 2305 | -$95.24 | $0.00 | -$95.24 |
| February 2008 | $110.96 | $0.00 | 3/20/08 | 6/13/14 | 2276 | $69.20 | $0.00 | $69.20 |
| March 2008 | -$4.48 | $0.00 | 4/20/08 | 6/13/14 | 2245 | -$2.76 | $0.00 | -$2.76 |
| April 2008 | $22.40 | $0.00 | 5/20/08 | 6/13/14 | 2215 | $13.59 | $0.00 | $13.59 |
| May 2008 | $38.50 | $0.00 | 6/20/08 | 6/13/14 | 2184 | $23.04 | $0.00 | $23.04 |

Agreement at 26; Additional Security Benefit Fund Agreement at 29–30; Vacation and Holiday Fund Agreement at 26; Trade Education Fund Agreement at 27; 401(k) Plan Agreement at 20. The Court interprets the Trustees' position that interest should be calculated at the lower rate of 10 percent as an exercise of their discretion.

| Month | Amount 1 | Amount 2 | Date 1 | Date 2 | Num | Amount 3 | Amount 4 | Total |
|---|---|---|---|---|---|---|---|---|
| June 2008 | $256.80 | $0.00 | 7/20/08 | 6/13/14 | 2154 | $151.56 | $0.00 | $151.56 |
| July 2008 | $0.00 | $0.00 | 8/20/08 | 6/13/14 | 2123 | $0.00 | $0.00 | $0.00 |
| August 2008 | $26.88 | $0.00 | 9/20/08 | 6/13/14 | 2092 | $15.41 | $0.00 | $15.41 |
| September 2008 | $17.60 | $0.00 | 10/20/08 | 6/13/14 | 2062 | $9.94 | $0.00 | $9.94 |
| October 2008 | $0.00 | $0.00 | 11/20/08 | 6/13/14 | 2031 | $0.00 | $0.00 | $0.00 |
| November 2008 | $49.60 | $0.00 | 12/20/08 | 6/13/14 | 2001 | $27.19 | $0.00 | $27.19 |
| December 2008 | $25.60 | $0.00 | 1/20/09 | 6/13/14 | 1970 | $13.82 | $0.00 | $13.82 |
| January 2009 | $0.00 | $0.00 | 2/20/09 | 6/13/14 | 1939 | $0.00 | $0.00 | $0.00 |
| February 2009 | $412.20 | $0.00 | 3/20/09 | 6/13/14 | 1911 | $215.83 | $0.00 | $215.83 |
| March 2009 | $0.00 | $0.00 | 4/20/09 | 6/13/14 | 1880 | $0.00 | $0.00 | $0.00 |
| April 2009 | -$571.20 | $0.00 | 5/20/09 | 6/13/14 | 1850 | -$289.54 | $0.00 | -$289.54 |
| May 2009 | $844.80 | $0.00 | 6/20/09 | 6/13/14 | 1819 | $421.05 | $0.00 | $421.05 |
| June 2009 | -$844.80 | $0.00 | 7/20/09 | 6/13/14 | 1789 | -$414.11 | $0.00 | -$414.11 |
| July 2009 | $1,984.80 | $0.00 | 8/20/09 | 6/13/14 | 1758 | $956.06 | $0.00 | $956.06 |
| August 2009 | -$301.20 | $0.00 | 9/20/09 | 6/13/14 | 1727 | -$142.53 | $0.00 | -$142.53 |
| September 2009 | -$148.80 | $0.00 | 10/20/09 | 6/13/14 | 1697 | -$69.19 | $0.00 | -$69.19 |
| October 2009 | $1,656.00 | $0.00 | 11/20/09 | 6/13/14 | 1666 | $755.94 | $0.00 | $755.94 |
| November 2009 | -$331.20 | $0.00 | 12/20/09 | 6/13/14 | 1636 | -$148.47 | $0.00 | -$148.47 |
| December 2009 | $6,066.12 | $1,037.52 | 1/20/10 | 6/13/14 | 1605 | $2,667.70 | $456.27 | $3,123.97 |
| January 2010 | $6,923.20 | $1,161.60 | 2/20/10 | 6/13/14 | 1574 | $2,985.81 | $500.97 | $3,486.78 |
| February 2010 | $6,514.48 | $1,093.92 | 3/20/10 | 6/13/14 | 1546 | $2,759.56 | $463.39 | $3,222.95 |
| March 2010 | $7,177.60 | $1,210.56 | 4/20/10 | 6/13/14 | 1515 | $2,979.49 | $502.52 | $3,482.01 |
| April 2010 | $3,148.80 | $532.80 | 5/20/10 | 6/13/14 | 1485 | $1,281.22 | $216.79 | $1,498.01 |
| May 2010 | $6,735.52 | $1,132.80 | 6/20/10 | 6/13/14 | 1454 | $2,683.40 | $451.30 | $3,134.71 |
| June 2010 | $7,269.36 | $1,219.68 | 7/20/10 | 6/13/14 | 1424 | $2,836.33 | $475.89 | $3,312.22 |
| July 2010 | $6,643.76 | $1,123.68 | 8/20/10 | 6/13/14 | 1393 | $2,535.80 | $428.89 | $2,964.69 |
| August 2010 | $6,989.92 | $1,181.76 | 9/20/10 | 6/13/14 | 1362 | $2,608.55 | $441.02 | $3,049.57 |
| September 2010 | $6,105.76 | $1,026.24 | 10/20/10 | 6/13/14 | 1332 | $2,228.41 | $374.54 | $2,602.95 |
| October 2010 | $1,871.56 | $312.00 | 11/20/10 | 6/13/14 | 1301 | $667.16 | $111.22 | $778.38 |
| November 2010 | $6,297.60 | $1,065.60 | 12/20/10 | 6/13/14 | 1271 | $2,193.16 | $371.10 | $2,564.26 |
| December 2010 | $4,935.90 | $835.56 | 1/20/11 | 6/13/14 | 1240 | $1,677.02 | $283.89 | $1,960.91 |
| January 2011 | $3,220.74 | $547.56 | 2/20/11 | 6/13/14 | 1209 | $1,066.92 | $181.39 | $1,248.31 |
| February 2011 | $3,374.00 | $582.24 | 3/20/11 | 6/13/14 | 1181 | $1,091.81 | $188.41 | $1,280.22 |
| March 2011 | $3,248.88 | $563.04 | 4/20/11 | 6/13/14 | 1150 | $1,023.72 | $177.41 | $1,201.14 |
| March 2012 | $4,986.82 | $843.58 | 4/20/12 | 6/13/14 | 784 | $1,071.25 | $181.21 | $1,252.46 |
| April 2012 | $4,986.82 | $843.58 | 5/20/12 | 6/13/14 | 754 | $1,030.26 | $174.28 | $1,204.54 |
| May 2012 | $4,986.82 | $843.58 | 6/20/12 | 6/13/14 | 723 | $987.90 | $167.11 | $1,155.01 |
| June 2012 | $4,986.82 | $843.58 | 7/20/12 | 6/13/14 | 693 | $946.91 | $160.18 | $1,107.09 |
| July 2012 | $4,986.82 | $843.58 | 8/20/12 | 6/13/14 | 662 | $904.55 | $153.02 | $1,057.56 |
| August 2012 | $4,986.82 | $843.58 | 9/20/12 | 6/13/14 | 631 | $862.19 | $145.85 | $1,008.04 |
| September 2012 | $4,986.82 | $843.58 | 10/20/12 | 6/13/14 | 601 | $821.20 | $138.92 | $960.11 |
| **Grand Total** | **$133,278.80** | **$20,531.62** | | | | **$48,280.57** | **$6,745.57** | **$55,026.14** |

**D. Statutory Damages**

The Trustees are also entitled to the greater of either 20% liquidated damages or an additional share of the interest award. 29 U.S.C. § 1132(g)(2)(C). Here, the interest award is larger than 20% of damages, so the Trustees will receive statutory damages in the amount of $48,280.57 for the Local 1 Funds and $6,745.57 for the National Funds.

## CONCLUSION

For the foregoing reasons, the Local Trustees are entitled to judgment against the Defendants, jointly and severally, in the amount of $229,839.96, and the National Trustees are entitled to judgment against the Defendants, jointly and severally, in the amount of $34,022.76. The Trustees are to appropriately apportion the damages between the Funds. See Trs. of the Plumbers Local Union, No. 1 Welfare Fund v. M.B. Mech. Corp., No. 12 Civ. 4798, 2013 WL 173391, at *2 n.1 (E.D.N.Y. Jan. 15, 2013) ("[S]ince a fund-by-fund breakdown has not been demonstrated or requested, and there is no inequity in requiring defendants to pay the total amount due to all Funds, the Court is going to assume that there is some sharing agreement between plaintiffs.").

SO ORDERED.

Dated:  Brooklyn, New York
  June 13, 2014

/s/
I. Leo Glasser
Senior United States District Judge